W. W. CRAY *vs.* WELLS-HOLMES COMPANY, INC.

SAME *vs.* FRANK O. WELLS.

Franklin.   November 17, 1926. — January 3, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Contract,* Performance and breach, Construction.   *Evidence,* Competency, Presumptions and burden of proof.   *Practice, Civil,* Ordering verdict.

A salesman made with a corporation which was a distributor for various manufacturing concerns a contract in writing under the provisions of which he was to sell the products of those concerns in the State of Ohio and was to receive a certain commission, the salesman depositing with the corporation $1,000 which it agreed to return to him without interest when his total sales should amount to $20,000, but which it was to retain as liquidated damages if he failed "to secure accepted business" in that amount within six months.   The contract provided that the manufacturing concerns had the right to pass upon credits as well as some of the other terms of the contracts made by the salesman.   An officer in the corporation personally guaranteed in writing the repayment of the deposit, should the salesman comply with the requirements of the contract.   In an action by the salesman against the corporation and against the guarantor, there was evidence for the plaintiff that he had procured a contract by a customer in Michigan for the purchase of goods amounting to over $20,000 from one of the named manufacturing concerns and that, when the order was placed, the president and manager of that concern had said to the plaintiff that he was anxious to have it.   Subject to exception by the defendants, evidence was admitted that one who was named on the corporation's stationery, which was in evidence, as secretary and treasurer and who had executed the plaintiff's contract in behalf of the defendant corporation, and the guarantor, who was named on the corporation's stationery as its president, had stated to the plaintiff that the corporation would not have had the sales contract in question

except for the plaintiff's efforts and that they would extend the plaintiff's territory to cover that town and would allow him a commission. Thereupon the customer's order was turned over to the corporation. The guarantor rested at the close of the plaintiff's evidence. For the defendant corporation, an officer of the manufacturing concern testified that he accepted the order "only in a way"; that he personally procured another order for the purchase which included the plaintiff's order and would not accept it until a personal guaranty of the purchaser had been given. The judge ruled in substance that "sales" meant accepted orders and that, if the plaintiff's territory was extended to include the locality in Michigan where the purchaser was, and if it was found that the defendant corporation, acting by someone having authority, had accepted the order, a finding should be made for the plaintiff. There was a verdict for the plaintiff. *Held,* that

(1) There was no error in ruling that the term "sales" in the contract meant accepted orders;

(2) The judge erred in ruling that the acceptance was to be that of the defendant corporation or some one authorized to act for it in the matter;

(3) Since the jury were not bound to believe the evidence of the manufacturing concern's officer as to acceptance of the order, the question, whether there had been acceptance by the manufacturing concern, was for the jury and both defendants were harmed by the erroneous ruling;

(4) When the plaintiff rested, there was some evidence of acceptance by the manufacturing concern, and a refusal by the judge to order a verdict for the defendant guarantor at that time was warranted.

Two ACTIONS OF CONTRACT described in the opinion. Writs dated December 14, 1922.

In the Superior Court, the actions were tried together before *Lummus,* J. Material evidence, motions, requests for rulings, and rulings by the judge are described in the opinion. There was a verdict for the plaintiff in the first action in the sum of $2,427.34, and in the second action in the sum of $1,195. The defendants alleged exceptions.

The cases were submitted on briefs.

*E. L. Shaw, T. R. Hickey, & R. H. Cook,* for the defendants.
*W. A. Davenport & C. Fairhurst,* for the plaintiff.

SANDERSON, J. The Wells-Holmes Company, Inc., was a distributor for various manufacturing concerns of which The Storms Drop Forging Company (hereinafter called the Storms Company) was one. On April 6, 1921, it entered into a written contract with the plaintiff to sell on commission, in a designated territory in the State of Ohio, the prod-

ucts of the manufacturing concerns named in the agreement. When the contract was made, the plaintiff deposited with the corporation $1,000, which it agreed to return to him without interest when his total sales should amount to $20,000; with the further provision that if he should "fail to secure accepted business" in that amount within six months from the date of the agreement, then the deposit would belong to the corporation as liquidated damages. The contract further provided that the payment of commissions to the plaintiff were to be made on the tenth of the month following the shipment of merchandise or acceptance of the plaintiff's order.

The case against the individual defendant is upon an obligation, stated in the report to be under seal, given by him to the plaintiff when he entered into the contract with the corporation. This obligation guaranteed payment to the plaintiff of the $1,000 deposited by him with the Wells-Holmes Company, Inc. as possible liquidated damages, should the plaintiff comply with all the requirements of clause one, section two of the agreement, and all its other stipulations. The contention made is, that the plaintiff is not entitled to a return of the $1,000 deposited because he did not secure the required amount of accepted business within six months from the date of the agreement. The plaintiff contends that he is entitled to a return of the deposit and also to a commission by reason of an order for $22,000 worth of forgings from the Hodges Chain Company of Galesburg, Michigan (hereinafter called the Hodges Company), to be furnished by the Storms Company.

On or about July 22, 1921, the plaintiff obtained from the Hodges Company such an order for forgings to be manufactured by the Storms Company. After receiving this order, which was outside of his territory, the plaintiff saw the defendant Wells and one Holmes, who could have been found to be the man who executed the contract with the plaintiff in behalf of the defendant corporation. Upon the heading of letters in evidence purporting to have come from the defendant corporation, Wells is named as president and Holmes as secretary and treasurer. The plaintiff's testi-

mony was undisputed that these men said to him that they would accept the order from Galesburg, Michigan; that they would not have had that order except for the plaintiff's efforts; and that they would extend the plaintiff's territory to cover that town and would allow him the five per cent commission. Thereupon the original order for these goods was turned over to them. The plaintiff, the customer, and the manufacturer each had a copy of this order. The defendants' exception to the admission of this conversation is without merit. Letters purporting to have been written by the defendant company, introduced in evidence in the case against the corporation, tended to support the plaintiff's contention that through this order he had brought his sales to the point where he was entitled to receive a return of his initial cash deposit for his minimum quantity of gross sales. The plaintiff also testified that the president and manager of the Storms Company said to him when the order was placed that his company was anxious to have the order of the Hodges Company.

The defendant Wells rested at the close of the plaintiff's evidence and moved for a directed verdict. The defendant corporation called the president and general manager of the Storms Company as a witness, who testified that he took the order of the Hodges Company through the plaintiff and accepted the order at that time "only in a way"; that they would have to look up the financial position of the Hodges Company; that he went to Michigan and while there took an order from the Hodges Company which included the order received through Cray; that he was not satisfied that the financial standing of that company was good; that he did not accept the order of Cray until the payment for the goods ordered by the Hodges Company was guaranteed by B. E. Shutt, and that no goods were shipped under the Cray order before the guaranty was executed. An exhibit in the case purports to be a contract between the Storms Company and the Hodges Company for the manufacture and shipment of the goods referred to in the testimony of the witness, with a guaranty of payment dated August 9, 1921, purporting to be signed by B. E. Shutt. It further appeared

that only a small part of the Hodges Company's order was delivered and paid for.

The trial judge ruled that there could be no recovery in either case, unless the territory of the plaintiff had been extended by mutual agreement to include the town in Michigan where the Hodges Company's order was taken; that, if the territory had been so extended, the plaintiff became entitled to a commission when the order was accepted by the defendant company acting by some one having authority to do that sort of thing; that, if the Hodges Company's order was accepted by the defendant company, the plaintiff would be entitled to recover from the corporation the commission of $1,100 and also the $1,000 deposited, with interest from the date of such acceptance; and that if the territory had been so extended with the consent of Wells, and the plaintiff proved he had made sales amounting to $20,000 in the first six months, interpreting sales to mean accepted orders in the sense stated above, then the plaintiff would be entitled to a verdict against Wells for the $1,000 deposited, with interest from the date of such acceptance.

There was no error in ruling that the term "sales" in the contract meant accepted orders; but the provision of the contract, giving the manufacturers the right to pass upon credits as well as some of its other terms, places the responsibility of accepting orders upon the manufacturers and not upon the defendant corporation. The judge erred in ruling that the acceptance was to be that of the defendant corporation or some one authorized to act for it in the matter. This ruling affected the rights of both defendants. Even though the testimony of the witness called by the defendant if believed would require a finding by the jury that the Hodges Company's order obtained by the plaintiff was accepted by the Storms Company, we cannot say that as matter of law they must have so found. When a party has the burden of proving the affirmative of a proposition, it is usually for the jury to decide whether that burden is sustained; and, even when the evidence is not contradicted, it is for them to say whether they will believe it. *McDonough* v. *Vozzela,* 247 Mass. 552.

The trial judge was justified in refusing to direct a verdict for the defendant Wells; when he rested, some evidence of the acceptance of the Hodges Company's order by the Storms Company had been introduced and the evidence of this defendant's consent to the modification of the contract made the question of his liability one of fact for the jury. *Parsons* v. *Gloucester Bank*, 10 Pick. 532, 534. *Sartwell* v. *Humphrey*, 136 Mass. 396.

The exceptions are sustained in each case because of the erroneous ruling to the effect that the acceptance referred to in the contract was that of the defendant corporation. The other questions argued may not arise in the same form again and have not been decided.

In each case the entry must be

*Exceptions sustained.*